**LINCOLN CITY LINES, Inc., a Corporation, Appellant,**

v.

**Julia Harvey SCHMIDT, Mother and Next Friend for and on behalf of Maxine Harvey, Appellee.**

**No. 15672.**

United States Court of Appeals
Eighth Circuit.

June 14, 1957.

Rehearing Denied July 9, 1957.

John R. Doyle, Lincoln, Neb. (Frank B. Morrison and Doyle, Morrison & Doyle, Lincoln, Neb., on the brief), for appellant.

Arthur E. Perry, Lincoln, Neb. (E. B. Perry, R. R. Perry and W. W. Nuernberger, Lincoln, Neb., on the brief), for appellee.

Before GARDNER, Chief Judge, WOODROUGH, Circuit Judge, and DONOVAN, District Judge.

WOODROUGH, Circuit Judge.

The mother of Maxine Harvey, a child of fourteen years, brought this action on the minor's behalf for damages for personal injuries suffered by the minor while she was riding as a paying passenger on the school bus operated by the defendant, Lincoln City Lines, Inc., and it was brought into collision with a train going seventy miles an hour, operated by the other defendant, Chicago, Burlington and Quincy Railroad Company, at about ten minutes to four in the afternoon of November 22nd, 1954, at Lincoln, Nebraska. There was diversity of citizenship and it was alleged in the amended petition that each of the defendants was guilty of described negligence causing and contributing to the accident and "that as the direct and proximate result of the combined acts of negligence of said defendants and each of them, the school bus upon which plaintiff was riding was struck" and the child was injured. It was also alleged that "the last clear chance to avoid the accident was that of Burlington." The defendant bus company admitted in its answer that the railroad company caused and contributed to the collision by its negligence, as alleged in the amended petition, and it also alleged additional acts of negligence on the part of the railroad. It denied negligence on its own part.

Before the trial a settlement in the form of a covenant not to sue was made with the railroad on payment by it of $1750.00, and the case proceeded to jury trial and verdict and judgment for $9,366.00 and costs against the bus company.

That company appeals from the judgment and without other objection, contends for reversal that the court erred in its instructions to the jury.

It appears upon substantial evidence that on the day of the accident appellant's bus loaded with some 16 school children approached the railroad crossing on A street and came to a complete stop before reaching the gates, which are maintained there together with bells and lights to signal the approach of trains. The driver looked both ways but saw no train coming. His vision was obscured by the sun and he made no other observation. He started up and had just started to enter upon the railroad track when the cross arms of the gate came down on the top of the bus and there was the flashing of signal lights

and the ringing of crossing bells warning of the approach of the train. He looked for the train after the cross bar came down. He then stopped in position where the collision occurred. He saw the train, attempted to shift into reverse gear, but met resistance. He tried but there was a mechanical obstruction. When unable to shift into reverse, he stopped the bus motor and was then able to shift into reverse gear. He waved out of the window to the engineer. He did not open the door until the children hollered for him to do so. He was in too much of a hurry to back the bus two feet. Backing that distance would have prevented collision. He went out the front door of the bus, and ran. Some of the children got off the front steps before the driver got off the bus but he was not able to say that all of the children were off the back steps. None, other than Maxine Harvey, is shown to have suffered injury.

The train which struck the bus was making the same trip that it made every day, arriving at Lincoln at 4:00 P. M. It was moving at seventy miles per hour as permitted by the railroad manual and time tables followed by its engineer, although that speed was unlawful at that place. The engineer saw the bus more than a mile away, but saw nobody in or near it. He watched the front of it, kept the bell ringing continuously from two miles away, operated the whistle four times and put on the emergency brake at five hundred feet distance. He then stopped within 1500 feet, which he said was a good minimum stopping distance. He said he knew of nothing he could have done to prevent the accident which he did not do.

The errors asserted by appellant in respect to the court's instructions are in substance to the effect (1) that the court failed to instruct on the doctrine of the last clear chance; (2) that the court erred in submitting the issue of the defective condition of the bus mechanism as there was no evidence of any defective condition; (3) that the court erred in instructing that lessened earning capacity of the minor was an element of damage; (4) that the court erred in instructing that the jury could find for plaintiff if defendants were negligent without limiting such negligence to that specifically alleged and to that which proximately caused or contributed to the accident; (5) the court erred in failing to instruct that the defendant, Chicago, Burlington and Quincy Railroad proximately and directly caused and contributed to said collision although such admission stood admitted by the pleadings and was taken as true; (6) the court erred in instructing: "one of the circumstances which defendant was obliged to consider in its provision for the safety of its fare paying passengers is that it operated its bus along A street in association with which it was required to consider the possibility that a train might approach the crossing at almost any time, the probability that train No. 90, according to its schedule might approach the crossing and the speed with which the Burlington trains, and particularly its train No. 90, might reasonably be expected to approach the crossing. It is for you to determine whether in view of that circumstance the defendant in its operation of its bus at the time and place in question exercised or failed to exercise the high degree of care for the safety of its passengers and particularly of Maxine Harvey, which as I have just admonished you the law imposes upon it."

As to the last objection, we do not observe any reason why the court should not have given the instruction. The evidence established the circumstances alluded to by the court without dispute and it was within the court's discretion to differentiate the case before the jury from a case where parties to a railroad crossing case are strangers to the crossing and the use of it where the accident occurred.

Likewise we find the objection we have numbered 5 to be without merit. The court instructed accurately and fully upon all of the issues presented by the pleadings and the facts established for the jury by admissions made in defend-

ant's answer to allegations of the complaint. The court also made clear and plain to the jury that the burden was upon the plaintiff and she could not recover without proving that the alleged negligence of the bus company was a direct and proximate cause which combined and concurring with the admitted negligence of the railroad company directly and proximately caused the accident. The court told the jury:

"When the negligence of two persons combines to produce a single injury to a third person, the two persons so concurring in such negligence and bringing about the single result are jointly and severally liable for all of the injuries thus proximately caused, regardless of the degrees of their respective negligent participation in such causation. So, if in this case you find from a preponderance of the evidence that both the defendant and the Burlington were negligent and that the proximate cause of the collision and of the injuries therefrom, if any, resulting to Maxine Harvey was the combined or concurring negligence of the defendant and the Burlington, then you will consider and find that the defendant is liable to the plaintiff for all damages resulting to Maxine Harvey from her injuries; and this result will follow regardless of whether the negligence, if any, of the defendant was more or less than the negligence of the Burlington. If, however, in your determination you should find that the defendant was not guilty of negligence proximately causing or combining with negligence of the Burlington in causing the collision, or that the sole proximate cause of the collision was negligence on the part of the Burlington, then your verdict will be for the defendant."

(1) As to the doctrine of last clear chance.

▪ Appellant's contention is to the effect that it could not be held liable to the injured school child however negligent its driver may have been in setting the school bus on the railroad track in front of the oncoming train and combine with the Burlington's negligence to directly and proximately cause the accident. It argues that Nebraska law recognizes the doctrine of last clear chance and that Nebraska law is such that "if the doctrine of last clear chance had been given to the jury or applied by the court, no verdict could have been rendered except one for defendant, Lincoln City Lines." The appellant did not present requested instructions covering its theory of the doctrine of last clear chance but objected that "the doctrine of last clear chance has not been explained or instructed to the jury."

The district court did not find that proper application of Nebraska law entailed such consequences upon a person who has been injured by the negligence of two joint tort feasors and is herself entirely without fault or negligence. The court informed the jury fully and clearly of the contents of the pleadings and also of its duty to find the Burlington's negligence and that it was a proximate cause of the accident, as charged in the complaint and admitted in the bus company's answer. But it treated the admitted allegation as to the last clear chance of the Burlington as merely an incident of the joint negligence that did not affect the innocent plaintiff's right to prove that the acts of the two defendants combined to produce the injury.

We find no Nebraska decisions to the contrary. In volume 36, number 2, Nebraska Law Review of March, 1957, the status of the doctrine of last clear chance in the state is discussed at length in the article, Comparative Negligence, and it does appear that from some angles some confusion has arisen in the state in respect to it. But there is no intimation of confusion in such cases as the present, where the plaintiff, in the action for damages resulting from negligence of two joint tort feasors is herself entirely without fault. We are satisfied that the appraisal and application of Nebraska law made by the district court in the

instructions herein was not contrary to Nebraska law nor clearly erroneous.

(3) The court instructed the jury that they had the right to take into consideration the extent to which the minor's injuries would reduce her earning capacity, to which exception was taken on the ground that there was no evidence as to her earning capacity. There was nothing in the evidence to indicate that she belonged to an idle class and as her injuries were shown to be of a permanent nature, some adverse effect upon her earning capacity was fairly to be expected. In Dafoe v. Grantski, 143 Neb. 344, 9 N.W.2d 488, 493, the Supreme Court of Nebraska said that "permitting the jury to include something for loss of future earnings was proper" in the case of a twenty year old boy who had suffered the loss of a leg but was ambitious to be a lawyer. We do not hold that the court mistook the Nebraska law in this particular.

(2) Appellant insists there was no evidence of any defective condition of the driving mechanism of its bus. In response to the same contention on the trial, the court said, "if, in the light of testimony as to what happened at and in immediate view of the collision and immediately preceding it, I were to take that question from the jury, I would be guilty of error." Our careful examination of the testimony of several witnesses who observed the stalling of the motor, the resistance the driver met with in attempting to shift gears, his sworn testimony that there was a mechanical obstruction preventing him from doing so, the declaration of a witness that when the bus driver tried to do something with the gear shift, you could hear the gears grinding and that of another witness, "the bus wouldn't back up," convinces that the court was not in error despite the strong testimony of defendant's employee that the mechanism was in good order after the accident. As the court properly instructed, transporting school children for hire imposes on appellant the duty of exercising the highest degree of care to maintain the bus in good and safe working order and the question whether that had been done in this case was for the jury. The high degree of care the Nebraska law requires of the carrier when transporting children is stressed in Dore v. Omaha & C. B. Street Railway Co., 97 Neb. 250, 149 N.W. 792, "the degree of care and responsibility is greater when transporting children of tender years than when transporting adults and persons capable of caring for themselves."

The instructions to the jury in this case reflect meticulous and painstaking care on the part of the trial court and we find no reversible error in them.

Affirmed.*

---

* With costs, including cost of the supplemental record.